**Robert PRICE, et al.**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al.**

**Civ. No. H–84–1221 (PCD).**

United States District Court, D. Connecticut.

Jan. 4, 1990.

Judgment affirmed 927 F.2d 88.

Edward T. Lynch, Jr., Dennis G. Ciccarillo, Michalik & Lynch, New Britain, Conn. and Michael Avakian, North Springfield, Va., for plaintiffs.

Michael B. Nicholson, Intern. Union, UAW & UAW–MDA Local 571, Daniel W. Sherrick, Detroit, Mich., Robert A. Goldstein, Intern. Union, UAW & UAW–MDL 571, Kliegman, Goldstein, Israel & Cooper, New York City, Glenn E. Coe, Perakos & Coe, Elec. Boat Div., Gen. Dynamics, New Britain, Conn., Arthur G. Telegen, Foley Hoag & Eliot, Boston, Mass., Barbara J. Collins, Intern. Union, UAW & UAW–MDA Local 57, and Gregg D. Adler, Kestell, Pogue & Gould, Hartford, Conn., for defendants.

### RULING AND ORDER

DORSEY, District Judge.

In the Ruling on Pending Motions dated May 31, 1989, this court ordered the parties to brief the retroactive effect of the Supreme Court's decision in *Communications Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), and the appropriateness of a remedy for pre-*Beck* violations. While retroactive application of judicial decisions is neither compelled nor prohibited by the Constitution, "the general rule is that Supreme Court decisions are given full retroactive application." *Barkman v. Wabash, Inc.*, 674 F.Supp. 623, 627 (N.D.Ill.1987), citing *Solem v. Stumes*, 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). Accordingly, the party seeking prospective-only application bears the burden of showing that such limited application is justified. *See Saunders v. H.K. Porter Co.*, 643 F.Supp. 198, 201 (E.D.Va.1986) ("strong presumption in favor of retroactivity cannot easily be overcome").

Defendant UAW contends that the *Beck* decision should not be applied retroactively

**1332**

under the principles established in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[1] Plaintiffs assert that *Beck* itself demonstrates that it is to be applied retroactively and thus a *Chevron* analysis is inappropriate. Further, they argue that, even if such an analysis is appropriate, it would result in a finding of retroactivity.

Had the Supreme Court given no indication whether *Beck* should apply retroactively, a *Chevron* analysis would be necessary to resolve the issue. *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 241 (2d Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). However, where an appellate court applies its decisions to the parties before it, but is silent as to whether the decision is to be given general retroactive effect, courts generally find further analysis of the retroactivity question to be unnecessary. *See, e.g.*, *Smith v. General Motors Corp.*, 747 F.2d 372, 375 (6th Cir. 1984) (en banc).

■ The Court in *Beck* held that agency shop agreements were limited by the union's duty of fair representation to exacting from non-union member employees "only those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor management issues' [, i.e.,] ... those germane to collective bargaining, contract administration, and grievance adjustment." *Beck*, 487 U.S. at 762–65, 108 S.Ct. at 2657–58, quoting *Ellis v. Brotherhood of Railway Clerks*, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984). While the Court did not expressly consider the issue of retroactivity, it did apply its holding to the claim in issue in the case before it, affirming the judgment of the Court of Appeals which provided, in part, that the "objecting employees are entitled to a refund of any amount collected of them by the union beyond" those found to be properly exactable from non-union members. *Beck v. Communication Workers of America*, 776 F.2d 1187,

1209 (4th Cir.1985), *aff'd on reh'g en banc*, 800 F.2d 1280 (4th Cir.1986). Where the Supreme Court itself has given retrospective application to a newly-adopted principle, "no sound reason exists for not doing so here." *Holzsager v. Valley Hosp.*, 646 F.2d 792, 797 (2d Cir.1981). This court must defer to the Supreme Court's implicit directive on this issue. *Welyczko*, 733 F.2d at 241.

■ On June 30, 1988, the Supreme Court granted plaintiffs' petition for writ of certiorari and vacated the Second Circuit's opinion, *Price v. UAW*, 795 F.2d 1128 (2d Cir.1986), and remanded for further consideration in light of *Beck*. *Price v. UAW*, 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988). Implicitly, the Supreme Court remanded to apply *Beck* to past facts. Had the Court intended *Beck* to apply only to claims arising between the date of its ruling and the ultimate resolution of this action, it surely would have outlined this extraordinary limitation on the application of its ruling in its order of remand. In view of the implicit endorsement of retroactive application, an analysis under *Chevron* is not found to be appropriate. Accordingly, it is found that defendant UAW has not met its burden of showing that prospective relief is warranted and *Beck* will be applied to plaintiffs' duty of fair representation claim for the period between September 1984 and June 30, 1988. The next issue on which briefing was ordered is the appropriateness of a remedy for pre-*Beck* violations of the duty of fair representation. Plaintiffs request that this court order the equitable restitution, with interest, of all service fees deducted since September 1984, from plaintiffs' salaries. This court has previously ruled that plaintiffs' post-*Beck* claims of unfair representation cannot presently be sustained because the Union has adjusted plaintiffs' assessed fees to 85.4% of that of its members and placed such payments in an interest bearing escrow account until an independent arbitrator has reviewed the Union's prelimi-

---

1. Defendant General Dynamics did not file a brief on this issue because it felt that neither *Beck* nor its fair representation analysis relates to employer liability for alleged union violations of the duty of fair representation.

nary percentage determination. *Price v. UAW*, 722 F.Supp. 933, 937–38 (D.Conn. 1989).

■ It is undisputed that, prior to *Beck*, plaintiffs paid their dues and initiation fees in compliance with the union security clause. Ruling on Pending Motions (4/11/85) at 2. Plaintiffs protested the payment of any amounts which the union will expend for purposes other than collective bargaining or contract administration. *Id.* The union, however, insisted that plaintiffs pay their dues and initiation fees in full, and threatened to seek discharge of any member of the bargaining unit who refuses to pay. *Id.* The union also informed plaintiffs of a procedure provided by the constitution of the International, which permits members to seek a rebate of that portion of their dues spent on political causes which one finds objectionable. *Id.* Accordingly, the expenditure of fees collected from plaintiffs, over their objections, for purposes unrelated to collective bargaining activities is a violation of the Union's duty of fair representation. *Beck*, 487 U.S. at 762–63, 108 S.Ct. at 2657; 29 U.S.C. § 158(a)(3). As defendant UAW does not dispute that it collected fees from plaintiffs without discounting the amount for any percentage expended on matters unrelated to collective bargaining, contract adjustment, and grievance adjustment, summary judgment is granted for plaintiffs on count four with respect to pre-*Beck* violations.

■ Defendant UAW argues that plaintiffs are not entitled to complete restitution and, moreover, should not be awarded any relief with respect to their pre-*Beck* duty of fair representation claim. Plaintiffs contend that the remedy for failure to provide *Beck* protections prior to collection is for the defendants to refund the improper monies collected, with interest.[2]

Under the circumstances as presented, plaintiffs are only entitled to a refund of those amounts nonchargeable under *Beck* with interest. *Cf. Hudson v. Chicago Teachers Union, Local No. 1*, 117 F.R.D. 413, 415 n. 1 (N.D.Ill.1987) (class members would not be entitled to complete restitution of all fees paid under unconstitutional procedure but could only recover that portion of his fees used to support political causes to which he objected); *McGlumphy v. Fraternal Order of Police*, 633 F.Supp. 1074, 1084 (N.D. Ohio 1986). Complete restitution of all fees would defeat the purpose of the fair share provisions under which plaintiffs pay dues and initiation fees, and allow the nonmember plaintiffs to receive the windfall of a "free ride" for the period in issue. *See Lowary v. Lexington Local Bd. of Educ.*, 704 F.Supp. 1456, 1470 (N.D. Ohio 1988); *see also Gilpin v. AFSCME*, 875 F.2d 1310, 1316 (7th Cir.). *cert. denied*, 493 U.S. 917, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989) (where the union rendered benefits to nonmembers with a reasonable expectation of compensation under the collective bargaining agreement and federal labor law, union would have a valid claim of restitution itself if it were forced to turn over all fees paid).[3]

■ In claiming complete restitution, plaintiffs are in effect seeking punitive damages. *Gilpin*, 875 F.2d at 1315–16. However, the Supreme Court has held that the fundamental purpose of unfair representation suits is compensatory and declined to permit punitive damages in such suits. *Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). Plaintiffs have not shown that the union acted in such a way to warrant an award of punitive damages, especially in

2. The cases relied upon by plaintiffs for complete restitution involve the unconstitutionality of union fee collection practices and hold that "no union or employer may take any action to enforce a non-union member's duty to pay any dues" absent a constitutionally adequate allocation procedure. *See, e.g., Tierney v. City of Toledo*, 824 F.2d 1497, 1504 (6th Cir.1987). However, given this court's finding of a lack of state action, this case is not governed by constitutional standards but by the union's duty of fair representation. *Price*, 722 F.Supp. at 936.

3. Plaintiffs assert that the "defendant unions may proceed in state court to collect any obligation [they] might owe them, just as they have done in the past." Plaintiffs' Brief (7/3/89) at 23 n. 7.

**1334**

view of the uncertain state of the law before *Beck*. Further, the Second Circuit held that plaintiffs' conclusory claim of bad faith was undercut in part by the fact that the international union had established a procedure for refunding monies spent on primarily political causes. *Price*, 795 F.2d at 1136.

The final issue is the proper procedure for determining what proportion of the union's total expenditures were attributable to activities other than those properly chargeable to non-members under *Beck*. As both parties have made all or nothing arguments as to an appropriate remedy for pre-*Beck* violations (plaintiffs for complete restitution, defendant UAW for denial of any relief); neither party has addressed the issue of the calculation of the amounts improperly collected prior to *Beck*. Such relief would necessarily require a determination, for the period in issue, of what proportion of the union's total expenditures were attributable to activities other than collective bargaining, contract administration and grievance adjustment. *Beck v. Communications Workers of America*, 468 F.Supp. 93, 97 (D.Md.1979). "The burden of proving such proportion rests upon the union, but '[a]bsolute precision in the calculation of such proportion is not, of course, to be expected or required.'" *Id.*, quoting *Brotherhood of Railway Clerks v. Allen*, 373 U.S. 113, 122, 83 S.Ct. 1158, 1163–64, 10 L.Ed.2d 235 (1963). Accordingly, the parties are to submit briefs, on or before January 19, 1990, addressing the appropriate procedure for determining this proportion, including the propriety of a judgment ordering this issue to be submitted to an arbitrator under a procedure similar to that instituted by the union in response to *Beck* and found to satisfy the union's duty of fair representation. *Price*, 722 F.Supp. at 940.

The final outstanding issue is the role of defendant General Dynamics. Although General Dynamics concedes that under limited circumstances an employer can be held responsible for violating the NLRA when it "participates" with a union in arbitrary or unfair activity, *Vaca v. Sipes*, 386 U.S. 171, 178, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967), it argues it is the breach of contract, not the fair representation claim, which lies against the employer. General Dynamics asserts that it did only what it was contractually obligated to do, i.e., to enforce, against plaintiffs prior to *Beck*, payment of the full amount of dues assessed by the UAW. Plaintiffs argue that they have alleged a hybrid § 301/fair representation claim, a breach of contract claim against the employer coupled with a concurrent fair representation claim against the union. In support, plaintiffs direct the court to ¶ 21 of their complaint as containing an allegation of breach of contract on behalf of General Dynamics. Plaintiffs' Opposition (3/29/89) at 33. However, this paragraph appears to allege only a breach of the union's duty of fair representation. Plaintiffs also argue that "it is the union which is the moving force behind the employer's contract breach and it is the union from whom plaintiffs seek" the essential relief as it holds and will continue to obtain plaintiffs' dues and will secure their discharge if the money is not paid. *Id.* at 34. Plaintiffs have not articulated how General Dynamics breached the collective bargaining agreement. Further, it does not appear that the employer would be necessary to provide the relief found to be appropriate under count four. Accordingly, plaintiffs shall also brief the issue of the relief sought against the employer and the basis therefor on or before January 19, 1990; General Dynamics shall respond on or before January 29, 1990.

SO ORDERED.